IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 13-00749 SOM |
| | ) | |
| Plaintiff, | ) | ORDER DENYING MOTION FOR |
| | ) | COMPASSIONATE RELEASE |
| vs. | ) | |
| | ) | |
| JAMES ASUNCION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**

**I.      INTRODUCTION.**

In December 2013, this court sentenced Defendant James Asuncion to 240 months of imprisonment and five years of supervised release.  *See* ECF No. 25.  Asuncion had entered a guilty plea with respect to one count of attempting to possess 50 grams or more of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A).  *See* ECF Nos. 18 and 25.  Asuncion was responsible for 439.8 grams of methamphetamine at 100% purity.  *See* Pretrial Investigation Report, ECF No. 26, PageID # 70; ECF No. 24 (adopting Pretrial Investigation Report).

Asuncion is incarcerated in the Lompoc prison complex, in Lompoc, California.  He says he was supposed to be transferred to "the Low" on October 20, 2020.  *See* ECF No. 54-5, PageID # 458.  "The Low" is possibly a reference to FCI Lompoc.  However, BOP records indicate that Asuncion is currently

incarcerated in USP Lompoc, which is known as "the Medium." Asuncion has a projected release date of July 20, 2030  *See* ECF No. 52-1 (calling FCI Lompoc "the Low" and USP Lompoc "the Medium"); https://www.bop.gov/inmateloc/ (input Register Number 15820-022) (last visited October 22, 2020).

USP Lompoc houses 1,206 inmates, with 895 at the USP, 106 at the North Camp, and 205 at the South Camp.  *See* https://www.bop.gov/locations/institutions/lom/ (last visited October 22, 2020).  Possibly, in referring to "the Low," Asuncion is referring to a camp within USP Lompoc, as the camps are usually for low-risk offenders.  As of the morning of October 22, 2020, USP Lompoc has no active cases of COVID-19 in its inmate population and four active cases of COVID-19 in its staff.  USP Lompoc and its two camps have had 149 inmates and 24 staff members recover from COVID-19.  Two inmates have died.  *See* https://www.bop.gov/coronavirus/index.jsp (last visited October 22, 2020).  The court notes that FCI Lompoc also has no active inmate cases of COVID-19.  *Id.*

Asuncion's moving papers state that he is 45 years old and 5' 5" and 198 pounds (making him obese with a body mass index of 32.9),[1] and that he has hypertension, hyperlipidemia, and a

---

[1]Asuncion's Presentence Investigation Report indicates that he is 5' 6".  *See* ECF No. 26, PageID # 81.  At 5' 6", Asuncion's body mass index would be 32, which would still make him obese, although slightly less so.  *See* https://www.bop.gov/locations/institutions/lom/ (last visited

phlebolith, which is a "vein stone" or a calcification within venous structures. *Id.*, PageID #s 11402, 11404; https://radiopaedia.org/articles/phleboliths?lang=us (last visited October 22, 2020). These statements are supported by the sealed medical records submitted to the court. *See* ECF No. 50, Page ID #s 301-03, 307, 312, 315, 324; https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html. Despite being prescribed medicine for his hypertension since at least the beginning of 2020, Asuncion's blood pressure remains elevated. *See* ECF No. 50, Page ID #s 307, 314.

On June 24, 2020, Asuncion tested negative for SARS-CoV-2, the virus that causes COVID-19. *See* ECF No. 50, PageID # 319; https://www.cdc.gov/coronavirus/2019-ncov/hcp/testing-overview.html (indicating that SARS-CoV-2 is the virus that causes Covid-19) (last visited October 22, 2020).

**II.      ANALYSIS.**

Asuncion's compassionate release request is governed by 18 U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the
> defendant after the defendant has fully
> exhausted all administrative rights to appeal
> a failure of the Bureau of Prisons to bring a
> motion on the defendant's behalf or the lapse

---

October 21, 2020).

> of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In other words, for the court to exercise its authority under § 3582(c)(1)(A), it must (1) find that the defendant exhausted his administrative remedies or that 30 days have passed since he filed an administrative compassionate relief request; (2) also find, after considering the factors set forth in section 3553(a), that extraordinary and compelling reasons warrant a sentence reduction; and (3) find that such a reduction is consistent with the Sentencing Commission's policy statements.  *United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020).

### A. Asuncion Has Satisfied the Time-lapse Requirement of 18 U.S.C. § 3582(c)(1)(A).

Asuncion submitted an administrative compassionate release request to the warden of his prison on August 10, 2020. *See* ECF No. 47-4, PageID # 193.  While this request was not submitted more than 30 days before the present motion was filed, the Government concedes that Asuncion has satisfied the

4

exhaustion requirement, given the passage of time. *See* ECF No. 53, PageID # 383 ("the Government will concede that Defendant has complied with the administrative exhaustion requirement of 18 U.S.C. § 3582"). Accordingly, this court finds that Asuncion has fulfilled the first requirement of § 3582(c)(1)(A).

> **B.  This Court Has Discretion in Determining Whether Extraordinary and Compelling Reasons Justify a Reduced Sentence.**

This court turns to § 3582(c)(1)(A)'s second requirement: whether extraordinary and compelling reasons warrant a sentence reduction. In orders addressing compassionate release motions in other cases, this court has expressly recognized that it possesses considerable discretion in determining whether a particular defendant has established the existence of extraordinary and compelling reasons that justify early release. This court has also stated that, in reading § 3582(c)(1)(A) as providing for considerable judicial discretion, the court is well aware of the absence of an amended policy statement from the Sentencing Commission reflecting the discretion given to courts when Congress amended the statute to allow inmates themselves to file compassionate release motions. Previously, only the Bureau of Prisons could file such motions for inmates. *See United States v. Mau*, 2020 WL 6153581 (D. Haw. Oct. 20, 2020); *United States v. Scher,* 2020 WL 3086234, at *2 (D. Haw. June 10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun.

9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020). Specifically, this court has recognized that an Application Note to a relevant sentencing guideline is outdated. This court continues to view its discretion as not limited by Sentencing Commission pronouncements that are now at odds with the congressional intent behind recent statutory amendments.

As amended by Congress, § 3582(c)(1)(A) states that a court's conclusion that extraordinary and compelling circumstances warrant a reduction in sentence must be consistent with any *applicable* policy statements issued by the Sentencing Commission. But following the First Step Act's amendments to § 3582(c)(1)(A) in 2018, the Sentencing Commission did not adjust its statements to make them consistent with the statutory amendment allowing prisoners themselves to bring motions for compassionate release. Instead, the Sentencing Commission has left in place statements premised on the Bureau of Prisons' exclusive authority to bring compassionate release motions. This court reads such statements as inapplicable to motions brought directly by prisoners. This court's exercise of discretion is consistent with the statutory amendment and at least the spirit of the Sentencing Commission's approach. *Mau*, 2020 WL 6153581; *Kamaka*, 2020 WL 2820139, at *2-3.

This court reads Application Note 1 to section 1B1.13 of the Sentencing Guidelines, which relates to compassionate release motions, as providing that extraordinary and compelling reasons warrant early release under any of four circumstances: if "(1) the defendant suffers from a terminal illness and certain other conditions are met; (2) the defendant suffers from a physical or mental condition that 'substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover;' (3) certain family circumstances justify compassionate release; or (4) '[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, [the first three categories of reasons].'"  *Kamaka*, 2020 WL 2820139, at *2 (quoting U.S.S.G § 1B1.13, Application Note 1).  Crucially, the final "catch-all" category applies only to the situation in which the Director of the Bureau of Prisons has made the required determination relating to compassionate release.

That "catch-all" made sense when only the Director of the Bureau of Prisons could bring a compassionate release motion. The Sentencing Commission anticipated that the Director of the Bureau of Prisons, and not the courts, would rely on the four categories:

> A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A). The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant [falls under any of the four enumerated categories]. *The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.*

U.S.S.G § 1B1.13, Application Note 4 (emphasis added). In other words, the Sentencing Commission anticipated that the Director of the Bureau of Prisons would file a compassionate release motion whenever it determined that an inmate fell into one of the four enumerated categories of extraordinary and compelling circumstances. Even then, when a court considered the motion, it was expected to exercise discretion (after considering a broad range of criteria, such as the § 3553 factors, the defendant's medical condition, and the defendant's family circumstances). That is, when the Director of the Bureau of Prisons brought a motion to the court, the Sentencing Commission did not intend for the court to be bound by the four enumerated categories. In particular, the Sentencing Commission did not intend for the court to be bound by the Director of the Bureau of Prisons' determination that "other reasons" justified early release.

8

If courts were indeed bound by the "catch-all" category, and if that category only allowed the Director of the Bureau of Prisons to exercise discretion, then judicial review would be meaningless. Courts would have to determine that extraordinary and compelling circumstances existed every time the Director of the Bureau of Prisons made such a determination. Courts would be nothing more than a rubber stamp. That was not the vision the Sentencing Commission had even under the old scheme. Instead, in noting that a court was in "a unique position to determine whether the circumstances warrant a reduction," the Sentencing Commission was clearly anticipating that courts would independently review such motions. U.S.S.G § 1B1.13, Application Note 4.

In sum, in Application Note 1, the Sentencing Commission reviewed the four categories that the Director of the Bureau of Prisons, not the courts, could consider in bringing motions. Those categories are not "applicable" to compassionate release motions brought by inmates themselves. *See United States v. Brooker*, --- F.3d ---, 2020 WL 5739712, at *4-6 (2d Cir. Sept. 25, 2020) ("[W]e read the Guideline as surviving, but now applying only to those motions that the BOP has made."). Even if the commentary applies to motions filed by inmates, a court's exercise of discretion to make the determination formerly made by the Director of the Bureau of Prisons is consistent with the

9

Sentencing Commission's understanding of the scope of a court's authority over the ultimate compassionate release decision. *Accord Mau*, 2020 WL 6153581; *Kamaka*, 2020 WL 2820139, at *2.

In allowing inmate motions, Congress gave no indication that judicial discretion was more constrained with inmate motions than with Bureau of Prisons motions. It appears that Congress reasonably expected Application Note 1 to be amended or supplemented. That did not occur. Possibly that was because the Sentencing Commission was short commissioners and thus lacked a quorum.[2] As this court has already concluded, the outdated Application Note does not constrain this court's discretion in determining whether extraordinary and compelling circumstances warrant a reduction in a sentence. *See Mau*, 2020 WL 6153581.

### C. Asuncion Has Not Demonstrated That Extraordinary and Compelling Circumstances Justify His Early Release.

According to the CDC, a person's risk of a severe illness (one that may require hospitalization, intensive care, or a ventalator) from COVID-19 increases with age. The CDC website explains that "people in their 50s are at higher risk for severe

---

[2]It appears that the Sentencing Commission has not had the opportunity to revise the policy statement in response to the First Step Act, because, since the passage of the First Step Act, the Sentencing Commission has had only two voting commissioners. *See, e.g.*, *United States v. Haynes*, 2020 WL 1941478, at *12 n.20 (E.D.N.Y. Apr. 22, 2020). The guidelines cannot be amended until two more voting commissioners are appointed to constitute a quorum. *Id.*

illness than people in their 40s.  Similarly, people in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s.  The greatest risk for severe illness from COVID-19 is among those aged 85 or older."
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited October 22, 2020).

The CDC currently lists the following conditions for people of any age as creating an increased risk of a severe illness from COVID-19:

> *Cancer
>
> *Chronic kidney disease
>
> *COPD (chronic obstructive pulmonary disease)
>
> *heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies
>
> *Immunocompromised state (weakened immune system) from solid organ transplant
>
> *Obesity (body mass index [BMI] of 30 kg/m2 or higher but < 40 kg/m2)
>
> *Severe Obesity (BMI = 40 kg/m2)
>
> *Sickle cell disease
>
> *Smoking
>
> *Type 2 diabetes mellitus

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited October 22, 2020).

The CDC also lists the following as possibly increasing the risk of a severe illness from COVID-19:

*Asthma (moderate-to-severe)

*Cerebrovascular disease (affects blood vessels and blood supply to the brain)

*Cystic fibrosis

*Hypertension or high blood pressure

*Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines

*Neurologic conditions, such as dementia

*Liver disease

*Overweight (BMI > 25 kg/m2, but < 30 kg/m2)

*Pregnancy

*Pulmonary fibrosis (having damaged or scarred lung tissues)

*Thalassemia (a type of blood disorder)

*Type 1 diabetes mellitus

*Id.*

The CDC notes that "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." *Id.* Given the CDC's guidance and the Government's concession on the issue, this court concludes that Asuncion's obesity and hypertension place him at an increased risk of a severe illness if he contracts COVID-19, although the extent of that risk is unclear. *See* ECF No. 53, PageID # 387

("Defendant's BMI is at least 30.  Therefore, the Defendant does have an underlying medical condition recognized by the CDC as putting him at an increased risk of severe illness were he to contract COVID-19.").  Generally, multiple medical conditions place a defendant at greater risk than defendants whose only medical condition is obesity.  *See United States v. Akolo*, 2020 WL 4810104, at *3 (D. Haw. Aug. 18, 2020) ("While this court certainly agrees that Akolo has legitimate concerns about contracting COVID-19, his obesity, standing alone, is not an exceptional and compelling reason that warrants a reduction in sentence.").  Here, it appears that Asuncion's hypertension may not be controlled.  Thus, it appears that Asuncion's multiple medical conditions place him at a greater risk of a severe case of COVID-19.  *See* William F. Marshall, III, M.D., *COVID-19 and High Blood Pressure: Am I at Risk?*, https://www.mayoclinic.org/diseases-conditions/coronavirus/expert-answers/coronavirus-high-blood-pressure/faq-20487663 ("The latest evidence shows that people with uncontrolled or untreated high blood pressure may be at risk of getting severely ill with COVID-19.  It's also important to note that people with untreated high blood pressure seem to be more at risk of complications from COVID-19 than those whose high blood pressure is managed with medication.").

   Asuncion's risk of a severe infection from COVID-19 is

tempered by the lack of active COVID-19 cases at USP Lompoc. Early in the COVID-19 pandemic, the virus spread rapidly through the prison. USP Lompoc and its two camps have had 149 inmate and 24 staff members recover from COVID-19, but 2 inmates have died. *See* https://www.bop.gov/coronavirus/index.jsp (last visited October 22, 2020). However, as of the morning of October 22, 2020, USP Lompoc has no active inmate cases of COVID-19 and 4 active staff cases of COVID-19. Presumably, the infected staff members are not coming to work. *Id.*

Because the parties offered conflicting accounts of the prison's present conditions, this court deferred ruling on this motion until it could review an expert report by Dr. Homer Venters summarizing the current state of the Lompoc complex COVID-19 outbreak. The report was submitted in a pending case, *Torres v. Milusnic*, No. CV. 20-4450 CBM (C.D. Cal.). Venters filed his report on September 25, 2020, *see* ECF No. 52-1 (copy of report filed in this case), calling the COVID-19 outbreak at the Lompoc complex "one of the nation's most overwhelming." *Id.*, PageID # 345.

What Venters was told by BOP staff sometimes differed greatly from what he was told by inmates at USP Lompoc. For example, according to staff, "100% of chronic care encounters occur withing the prescribed timeframe based on BOP guidelines." *Id.*, PageID # 359. However, inmates reported that chronic care

14

patients "go many months in between encounters, some reporting more than six months since being seen."  *Id.*, PageID # 360.

BOP staff painted a picture of following COVID-19 protocols.  For example, Venters observed clean common areas and was told that any high risk inmates were placed in single cells.  *Id.*, PageID # 357.  He was told that new inmates are quarantined and cells are cleaned by inmates between intakes of new inmates.  Inmates with such cleaning duties are screened before each shift.  *Id.*, PageID # 357-58.  Venters was told that, when inmates are quarantined, staff wears personal protective equipment whenever a food slot or door is opened.  *Id.*, PageID # 358.

But inmates told Venters that they lacked paper towels.  *Id.*, PageID # 359.  They also told him that staff "do not wear masks, especially on night and weekend shifts."  *Id.*, PageID # 360.  Inmates told Venters that common areas are not cleaned regularly and that, when an inmate is identified as potentially having COVID-19, the prison does not clean or disinfect their living space.  *Id.*  Inmates said that they were threatened by staff for speaking candidly to Venters.  *Id.*

Venters did note some positive things the Lompoc complex was doing to address the risks of COVID-19.  For example, the facility was screening staff well and had a good hospital unit and screening database.  *Id.*, PageID # 362.

Reading the Venters report as a whole, and considering the lack of any active cases of COVID-19 in USP Lompoc and its two camps, the court concludes that Asuncion is not in immediate danger of being infected with COVID-19, although the possibility that he will be exposed to the virus in the future cannot be ignored. This court is not discounting what may have been an attempt by the BOP to show Venters better conditions at the prison than usually exist or what may be serious flaws in USP Lompoc's COVID-19 protocols. Nevertheless, Asuncion has not shown that his susceptibility to COVID-19, standing alone, is an exceptional and compelling reason that warrants a reduction of his sentence at this time.

The court therefore turns to an examination of factors set forth in § 3553(a). Over and above Asuncion's medical conditions and the situation at USP Lompoc, several factors favor release: 1) Asuncion's crime was a nonviolent drug crime that did not involve firearms; 2) Asuncion was not a leader with respect to the drug crime; 3) Asuncion made attempts in prison to rehabilitate himself, including taking numerous educational courses, *see* ECF No. 47-7, PageID #s 276-77; 4) Asuncion has had a job in the laundry room of the prison since 2014 and says that his supervisor has characterized him as an asset, *see* ECF No. 54-3, PageID # 452; and 5) Asuncion represents that he has had no prison discipline. *Id.* If released, Asuncion plans to live with

his parents and younger brother in a two-bedroom apartment in Honolulu, Hawaii.  His parents say they will support him financially and that neither they nor Asuncion's brother has any felony conviction.  *See* ECF No. 47-9, PageID # 285.  Asuncion says he has been saving his prison wages so that he will have a small amount of money when he is released.  *See* ECF No. 54-3, PageID # 452

On the other hand, there are several factors suggesting that early release should be denied.  This court's lengthy sentence reflected the extensive nature of the drug crime at issue, which involved 439.8 grams of methamphetamine at 100% purity, as well as Asuncion's lengthy criminal history and designation as a career offender.  *See* ECF No. 26, PageID # 77.  As detailed in public filings, some of Asuncion's convictions involved violence, including punching his girlfriend in the face and elbowing his wife in the face.  *See* ECF No. 53, PageID # 400.  This history of violence is obviously concerning.  The amount of time remaining on Asuncion's sentence is also an important consideration.  It appears that Asuncion has served only about seven years of his 20-year sentence.  *See* ECF No. 47-1, PageID # 171.  Asuncion has almost ten years left to serve before his projected release date, which takes into account good-time credit.

Under § 3582(c)(1)(A), only extraordinary and

compelling reasons can justify a reduction in an inmate's sentence.  After considering Asuncion's medical conditions, as well as the apparent improvement in the situation at USP Lompoc, the lengthy time remaining on his sentence, his extensive criminal history and history of violence, his attempts at rehabilitation, his lack of disciplinary sanctions, and his release plan, this court concludes that it lacks an extraordinary and compelling reason to reduce his sentence under § 3582(c)(1)(A).  Asuncion may, of course, file another motion should his factual situation change.

### III.    CONCLUSION.

Asuncion's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is denied.

It is so ordered.

DATED: Honolulu, Hawaii, October 22, 2020.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Asuncion*, Cr. No. 13-00749 SOM; ORDER DENYING MOTION FOR COMPASSIONATE RELEASE